IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

REBECCA O.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 6:17-cv-01463-AA
**OPINION AND ORDER**

AIKEN, District Judge:

Rebecca O. ("Plaintiff") brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied Plaintiff's application for Supplemental Security Income ("SSI") on February 29, 2016. For the reasons that follow, the Court REVERSES and REMANDS for an immediate award of benefits.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## BACKGROUND

Plaintiff applied for SSI on November 15, 2013. Following denials at the initial and reconsideration levels, an administrative law judge ("ALJ") held a hearing and issued an unfavorable decision on February 29, 2016. After the Appeals Council denied Plaintiff's request for review, Plaintiff timely filed a complaint in this Court seeking review of the ALJ's decision.

## STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." In reviewing the ALJ's findings, district courts act in an appellate capacity not as the trier of fact. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). The district court must affirm the ALJ's decision unless it contains legal error or lacks substantial evidentiary support. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citing *Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1052 (9th Cir. 2006)). Harmless legal errors are not grounds for reversal. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (citation and internal quotation marks omitted). The complete record must be evaluated and the evidence that supports and detracts from the ALJ's conclusion

must be weighed. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is subject to more than one interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed, because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, determining: "(1) whether the claimant is 'doing substantial gainful activity'; (2) whether the claimant has a 'severe medically determinable physical or mental impairment' or combination of impairments that has lasted for more than 12 months; (3) whether the impairment 'meets or equals' one of the listings in the regulations; (4) whether, given the claimant's 'residual functional capacity,' the claimant can still do his or her 'past relevant work' and (5) whether the claimant 'can make an adjustment to other work.'" *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 20 C.F.R. §§ 404.1520(a), 416.920(a)).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date. At step two, the ALJ found that Plaintiff had the following severe limitations: "obesity; history of ovarian cancer; diabetes mellitus; neuropathy; anxiety; and depression (20 CFR 416.920(c))." Tr. 24. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the requirements of a listed impairment.

The ALJ then assessed Plaintiff's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e); § 416.920(e). The ALJ found that Plaintiff

> has the [RFC] to perform sedentary work as defined in 20 CFR 416.967(a) except she is limited to no more than occasional balancing, kneeling, crouching, crawling, climbing, or stooping. She is limited to simple, repetitive, routine tasks requiring no more than occasional interaction with supervisors and coworkers. The claimant would need to work in an environment where she has only brief interaction with the general public.

Tr. 28. At step four, the ALJ found that Plaintiff could not perform any past relevant work. At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and found that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform, including document preparer, eyeglass assembler, and jewelry preparer. Accordingly, the ALJ found that Plaintiff was not disabled under the Act.

## DISCUSSION

There are two issues before me: (i) did the ALJ properly assess Plaintiff's symptom allegations and (ii) whether the case should be remanded for an immediate award of benefits.

I.   Plaintiff's Symptom Allegations

The Commissioner argues that the ALJ rightly found Plaintiff's symptom allegations to not be credible. For the reasons that follow, I disagree.

In *Cotton v. Bowen*, the Ninth Circuit established two requirements for a claimant to present credible symptom testimony: (i) the claimant must produce objective medical evidence of an impairment or impairments and (ii) show the impairment or combination of impairments could reasonably be expected to produce some degree of a claimant's alleged symptoms. 799 F.2d 1403, 1407 (9th Cir. 1986). The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

Plaintiff satisfied both of the *Bowen* requirements. Plaintiff is morbidly obese with a body mass index that ranged between 53.83 at the beginning of her cancer treatment and was 82.6 at the time of her hearing. She stands at a height of 65 inches and her weight has ranged from 323 to 496 pounds. She alleges a list of symptoms including anxiety, depression, sleep issues, trouble with breathing, memory problems, difficulty in leaving her home, trouble bathing (her daughter testified that she bathed once a week), debilitating fatigue, and pain and weakness throughout her body and extremities. She alleges that these symptoms have a host of causal links. For example, she alleges that she has osteoarthritis in both of her knees and peripheral neuropathy in her feet—allegations she supports with evidence from two treatment providers (Dr. Patel and Alice Stappler, PA). She also alleged asthma, diabetes, fibromyalgia, osteopenia, Stage III kidney disease, and chronic venous

insufficiency—allegations she supports with evidence from Ms. Stappler, Dr. Latham, and Dr. Patel. Thus, Plaintiff meets the threshold *Bowen* requirements.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's testimony only if he provides clear and convincing reasons for doing so. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*

A claimant's activities of daily living can be used to discredit a claimant in two ways: Either the activities can contradict the claimant's other testimony, or the activities can meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). "[D]aily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Id.* at 639.

Here, the Commissioner argues that the ALJ rightly discredited Plaintiff's testimony because it was contradictory, because Plaintiff had a limited work history, and because she failed to follow through with her exercise routines. But none of these reasons are convincing. The Commissioner does not address Plaintiff's argument about the ALJ's error in evaluating her allegation of fibromyalgia, but, as explained below, the ALJ also erred in this regard.

### A. Contradictory Testimony

The ALJ found Plaintiff's testimony contradictory. But the ALJ's opinion regularly isolates statements by Plaintiff, her treatment providers, and her family members and interprets them unreasonably outside of their proper context. For example, the ALJ noted that Plaintiff's testimony was contradictory because she described herself as having extreme anxiety about being around large groups of people, but that she recently started attending church. The ALJ also focused on Plaintiff's allegations that she could not walk very far before she has trouble breathing and that she cannot even make a sandwich due to her knee pain. The ALJ later contrasts this with her "function report," which indicates that she actually could make a sandwich. Tr. 29.

But these examples only evince contradictions if one interprets them unreasonably and out of context. The statement that "I have extreme anxiety and can't be around large groups of people" is not reasonably interpretable as indicating such a degree of anxiety that one would not be in a large group under any circumstance—it is simply a statement indicating that one is deeply uncomfortable in such a circumstance. Modern life requires individuals to engage in activities that they are deeply uncomfortable with often. And to articulate the discomfort associated with that activity does not mean that the activity does not cause deep discomfort— such an inference is neither logical nor reasonable. Similarly, a statement like "I am so fatigued that I can't even make a sandwich" is not reasonably interpretable as indicating the impossibility of making a sandwich—the statement is simply meant to

communicate an extreme level of discomfort that the speaker associates with making a sandwich. The speaker may very well have made three sandwiches that week and the point would be the same: a degree of hyperbole to make a point is not an invitation to contrast the hyperbole with an instance of its opposite and call it contradictory.

This flaw is also present in other parts of the ALJ's assessment of Plaintiff's symptom allegations. The ALJ further contrasts Plaintiff's testimony that she could only walk 10 to 15 feet with her function report indicating that she could walk half a block. The ALJ also contrasts Plaintiff's daughter's statement that her mother was a "hermit basically" with the fact that Plaintiff "drives at least once a week for coffee." Such contrasts are unreasonable and not a proper basis for discounting Plaintiff's credibility.

Additionally, the Commissioner failed to identify whether Plaintiff's activities meet the threshold for transferable work skills. *See id.* Even if driving, making a sandwich, and going to church could be considered skills "transferable to a work setting," the record does not reflect that Plaintiff spends a "substantial part of [her] day engaged" in such activities. In fact, the record indicates that Plaintiff spends very little time doing these activities. Accordingly, Plaintiff's daily activities do not constitute a clear and convincing reason for the ALJ to reject Plaintiff's symptom allegations.

### B. Plaintiff's Work History

The Commissioner also points to Plaintiff's poor work history as a reason to discount her credibility and cites *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir.

2002). But the ALJ in *Thomas* found the plaintiff's poor work history to be "extreme" and considered it within the totality of other factors for discounting the plaintiff's credibility. *Id.* For example, the ALJ in that case found that the plaintiff was able to perform chores around the house, had a history of drug and alcohol abuse, and was caught lying about this history as early as two weeks before the hearing. But none of these factors are present here. In this case, Plaintiff's lack of work history can reasonably be attributable to her serious medical conditions. The Commissioner notes that Plaintiff worked at substantial gainful activity levels in only two of the last 30 years, which raised "a question as to whether [her] continuing unemployment is actually due to medical impairments." Tr. 29. But even if she could at one time seek appropriate employment, the record leaves little doubt that Plaintiff's weight, psychiatric issues, and physical ailments would preclude her from seeking employment in her current state. Plaintiff's last known weight is close to 500 pounds and she is less than five and a half feet tall. Common sense dictates that such a person is very likely to have a litany of physical and psychiatric issues that will preclude employment—and at a minimum preclude successful performance within that job. Thus, Plaintiff's poor employment history is not a convincing reason to doubt her inability to seek employment.

### C. Plaintiff's Treatment Plan

Finally, the Commissioner notes that Plaintiff was not complying with her exercise, diet, and healthcare management plan and cites *Fair v. Bowen*, 885 F.2d 597, 603–04 (9th Cir. 1989). That case is used for the proposition that a claimant's

Page 9 – OPINION AND ORDER

"unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" can be used to discredit their symptom allegations. But Plaintiff's failure to follow through with her healthcare management plan has an obvious explanation: Plaintiff is very ill and lacks the kind of family and financial support needed to follow through with her doctor's recommendations, *e.g.*, with respect to diet and exercise. And a physician's recommendation that a claimant perform therapeutic exercises is not evidence that the claimant can necessarily follow through with the recommendation. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

The Commissioner's reasoning is flawed in that when faced with two theoretically possibly explanations for Plaintiff's actions, the Commissioner picks the less likely explanation to make an unreasonable inference about Plaintiff. That is, while it may be the case that a plaintiff's failure to follow through with their prescribed treatment plan evinces malingering, it may also be the case that the failure has another more reasonable explanation. Ninth Circuit case law, and in this instance *Fair v. Brown*, doesn't justify using any theoretical reason to find Plaintiff's testimony to be not credible. The standard is clear and convincing, and the convincing factor requires positing a reason that is more than merely possible—it also has to be reasonable. Since there is no evidence to suggest that Plaintiff's failure to follow through with her prescribed treatment is due to something other than the severity of her illness, the ALJ erred in discounting Plaintiff's testimony for this reason.

### D. Fibromyalgia

The ALJ considered Plaintiff's fibromyalgia to be non-medically determinable because it was not diagnosed by an acceptable medical source and alternate causes weren't ruled out. He further explained that there was no evidence for a finding of disability because of fibromyalgia under Social Security Ruling 12-2p. For the reasons below, the ALJ erred.

Imaging evidence, surgery, and neurological findings are not required to establish the existence of fibromyalgia under SSR 12-2p. Diagnosing fibromyalgia "does not rely on X-rays or MRIs." *See Revels v. Berryhill,* 874 F.3d 648, 657 (9th Cir. 2017). Fibromyalgia "is diagnosed entirely on the basis of patients reports of pain and other symptoms," and there "are no laboratory tests to confirm the diagnosis." *Id.* at 663 (citing *Benecke v. Barnhart,* 379 F.3d 587, 590 (9th Cir. 2004). When evaluating whether a claimant's RFC renders her disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods as described in SSR 12-2p and relevant case law. *Id.* at 662.

Under SSR 12-2p, there are a number of symptoms that are considered to be clinical "signs" of fibromyalgia, including muscle pain, fatigue or tiredness, muscle weakness, headache, numbness or tingling, dizziness, insomnia, depression, nausea, vomiting, or nervousness.

Here, the record includes many clinical signs of Plaintiff's fibromyalgia. In October 2014, Ms. Stappler tested Plaintiff's knee reflexes and the tender points associated with fibromyalgia. Plaintiff's reflexes were abnormal, and she tested

positive for all eighteen tender points. The cutoff for a diagnosis of fibromyalgia under SSR 12-2p's first set of criteria is eleven or more tender points. *Revels v. Berryhill*, 874 F.3d 648, 663 (9th Cir. 2017). Ms. Stappler also ordered a sleep study. Plaintiff tested positive for sleep apnea with almost two dozen hypoxic events during the night and extended episodes of paroxysmal tachycardia. Dr. Muller also noted diffuse tender points consistent with fibromyalgia when he examined Plaintiff on June 13, 2013. All of these notations were included in Plaintiff's record. If an ALJ fails to properly consider the longitudinal record of fibromyalgia, it may undermine the ALJ's findings. *See Id.* at 656–57 (reversing and ALJ's findings regarding fibromyalgia and remanding for an immediate aware of benefits). Thus, the ALJ's failure to consider the full record is harmful legal error.

## II. Remand

The Court has discretion under 42 U.S.C. § 405(g) to decide "whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). The issue turns on the utility of further proceedings. *Id.* A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. *Strauss v. Comm'r of the Soc. Sec.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

The credit-as-true doctrine is settled in the Ninth Circuit and binding on this Court. *Garrison*, 759 F.3d at 999. Under this doctrine, courts must utilize the following sequential evaluation process: (i) determine whether the ALJ made a

harmful legal error, such as failing to provide legally sufficient reasons for rejecting evidence, be it claimant testimony or medical opinions; (ii) review the whole record to assess whether it is fully developed, free from conflicts and ambiguities, and that all essential factual issues have been resolved; and (iii) determine whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Dominguez v. Colvin*, 808 F.3d 403, 407–08 (9th Cir. 2015) (internal quotation marks and citation omitted). Additionally, even if all three of the foregoing primary elements are met, courts can still remand for further proceedings if the record as a whole "creates serious doubt" about whether a claimant is disabled as a matter of law. *Id.*

Here, prong (i) of the credit-as-true analysis is met. The ALJ used unconvincing reasons to reject Plaintiff's symptom testimony and failed to properly consider the record of Plaintiff's fibromyalgia. This was harmful legal error. Absent sufficient reasons to discount Plaintiff's testimony, her symptom allegations are given their full weight. Thus, the first prong of the credit-as-true test is met.

With respect to prong (ii), there is no reason to believe that the record is not fully developed, and the Commissioner has not pointed to any ambiguities or factual issues that need to be resolved. With respect to prong (iii), the ALJ would be required to find Plaintiff disabled if her testimony is credited as true. "[A]n impairment imposes a significant work-related limitation of function when its effect on a claimant's ability to perform basic work activities is more than slight or minimal." *Fanning v. Bowen*, 827 F.2d 631, 633 (9th Cir. 1987). There is no doubt that Plaintiff

is disable. She is morbidly obese with a BMI or body mass index that ranged between 53.83 at the beginning of her cancer treatment and was 82.6 at the time of her hearing. She has osteoarthritis in both of her knees and peripheral neuropathy in her feet. She suffers from a range of other issues such as asthma, Stage III kidney disease, and chronic venous insufficiency. These impairments would reasonably have more than a slight or minimal effect on Plaintiff's work activities. Additionally, considering the record as a whole, there is not serious doubt as to Plaintiff's disability. *Dominguez*, 808 F.3d at 407–08.

The record is fully developed and further administrative proceedings would serve no useful purpose. Crediting the evidence in the record as true, the ALJ would be required to find that Plaintiff is disabled. Therefore, the Court reverses the Commissioner's decision and remands for an immediate award of benefits.

## CONCLUSION

Because the court remands for an immediate award of benefits, there is no need to address Plaintiff's additional arguments. The Commissioner's decision that Plaintiff is not disabled is REVERSED and the case is REMANDED for an immediate award of benefits.

IT IS SO ORDERED.

Dated this 28 day of March, 2019.

Ann Aiken
United States District Judge